421 So.2d 314 (1982)
Alethia Ann Starkey COOPER
v.
The HEIRS OF St. Clair COOPER, Sr.
No. 15042.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Joseph A. Sims, Jr., Hammond, for plaintiff.
Donna Lee, Baton Rouge, for defendant.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Mrs. Alethia Ann Starkey Cooper (plaintiff) filed suit on July 20, 1980, seeking to have declared as her separate property a certain tract of land containing 44.8 acres. Three of the seven named defendants, children of the marriage between plaintiff and St. Clair Cooper, Sr., claimed that the property was community. As heirs of St. Clair Cooper, Sr., they alleged they were entitled to be recognized as owners of an undivided one-half interest therein.
The trial judge held that plaintiff proved that this property was her separate property and awarded her judgment against defendants, assessing all costs to Ruby Cooper Pierson, Geneva Cooper Rivett, and Clara Lee Cooper Campbell (the three opposing defendants). These defendants perfected this suspensive appeal.
The issue on appeal is whether this property is separate or community. Defendants urge that the trial judge committed manifest error in determining the tract was plaintiff's separate property.
*315 The ownership of the property, prior to plaintiff's purchase, was discussed by the trial judge in his written reasons:
"Testimony proved the property in question had long been owned by the Starkey family. Mrs. Cooper was the only child of Henry Starkey, a Starkey heir. The 44.8 acres can be traced to four lots of 11.2 acres each accumilated (sic) by Henry Starkey. To cure a flaw in the title this property was permitted to be seized and sold for taxes. Henry Kinchen purchased this and other parts of the Starkey Heir property. The subject property was [then] sold to Mrs. Cooper."
By act of sale dated August 15, 1924, while married to and residing with St. Clair Cooper, Sr., plaintiff purchased the disputed tract from Henry Thomas Kinchen for $725.00, which was paid in cash at the time of the sale. The deed described the tract, situated in Livingston Parish, Louisiana, to wit:
"A certain tract or parcel of land in the South East quarter of Section 22, T. 6 S., R. 6 E., and more particularly described as follows:
Lots 3, 4, 5 and 6, containing 44.8 acres, by survey made by C.M. Moore, Surveyor, dated May 16, 1921, as per plat of said survey, annexed to a deed, made this day, from this vendor to John C. Albin, bounded North by quarter Section line of said Sec. 22, T. 6 S., R. 6 E., East by Section line and Andy Galya, South by Lot 7 of said survey, and West by Lots 1 and 2 of said survey.
Being a portion of the same property acquired by the vendor herein from the heirs of Abi Starkey, by deed of record in Book 37, page 259, of the Conveyances of Livingston Parish, Louisiana."
The deed also contains the following recital:
"And the said Vendee herein, Mrs. Alethia A. Cooper, did declare unto me, said Notary, that she is purchasing the hereinabove described property with her own separate and paraphernal funds, derived by inheritance from her deceased[1] mother, and for her own separate use and benefit, and under her separate administration and control, and the same is to form no part of the community of acquets and gains which now exists between her and her said husband, S.R. Cooper."
The law in effect in 1924 clearly established a presumption that all property acquired during the marriage fell into the community of acquets and gains. This remained true, although the property was purchased in the name of only one of the spouses. La.C.C. art. 2402; Curtis v. Curtis, 403 So.2d 56 (La.1981). The party asserting the separate nature of the property has the burden of overcoming this strong presumption in favor of the community. Curtis, supra; Houghton v. Hall; 177 La. 237, 148 So. 37 (1933); Luchsinger v. Boettner, 388 So.2d 93 (La.App. 1st Cir.1980). The jurisprudence developed a triple burden of proof for instances where the wife attempted to prove the separate nature of property. She was required to prove that she used separate funds for the purchase, that these funds were administered by her alone, and that she individually made the investment. Curtis, supra; Southwest Natural Production Company v. Anderson, 239 La. 490, 118 So.2d 897 (1960); Smith v. Smith, 230 La. 509, 89 So.2d 55 (1956); Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947); Houghton v. Hall, supra; and Luchsinger v. Boettner, supra. A recital in the deed of acquisition concerning the paraphernality of the funds being used and their separate investment is proper evidence, but such a recital, standing alone, will not be sufficient to rebut the community presumption. Smith v. Smith, supra; Johnson v. Johnson, 213 La. 1092, 36 So.2d 396 (1948). The evidence produced must be clear, strict, and legally certain. Southwest Natural Production Company v. Anderson, supra; Succession of Milton, 278 So.2d 159 (La.App. 1st Cir.1973).
An examination of the act of sale conveying the property from Henry Kinchen to plaintiff lists only the plaintiff as vendee, and she alone signed the instrument in that capacity. The deed states that:

*316 "... she has been once married, then to St. Clair R. Cooper, with whom she is still living and residing,"
and that she is:
"... purchasing and accepting, and acknowledging delivery and possession for herself, her heirs, and assigns."
As mentioned earlier, the deed also contains a recitation concerning the separateness of the funds used for the purchase and that the property was "to form no part of the community of acquets and gains" existing between plaintiff and her husband.
Plaintiff was 88 years old at the time of trial, yet was able to testify with ample clarity and coherency as to the events surrounding the purchase. She testified that after her mother died, her father came to live with her and her family; that he remained with them until he died in approximately 1942; that he owned cattle and hogs at that time, which he sold; that he usually placed the funds from these sales in the bank, yet would keep what he needed at home in an old purse; and that on the day of the sale he went and got the money out of this old purse and gave her the funds to purchase the property. Plaintiff further stated that her husband, St. Clair Cooper, Sr., was present at the sale; that the deed was read aloud in his presence; that he made no objection thereto; and that she gave the money ($725.00) in cash to Henry Kinchen to purchase the property.
John Starkey, plaintiff's first cousin, was 81 years old at the time of trial. He was one of the two witnesses who signed the act of sale in 1924. The trial judge gave credence to his testimony and labeled him one of the few unbiased witnesses, "with absolutely nothing to gain." John Starkey corroborated plaintiff's version of the sale by stating that he was present when the sale took place; that plaintiff and her husband were sitting together; that plaintiff paid the $700.00 in cash by withdrawing the funds from her purse; and that the deed was read aloud in St. Clair Cooper's presence, and he made no objection thereto.
A second independent witness whom the trial judge also found to be unbiased, was Berlin Starkey. He, too, was plaintiff's first cousin, and he was 79 years old at the time of trial. He testified that he and plaintiff were brought up together; that he knew the family well; that he had talked with the family regarding the ownership of the property in question; and stated:
"The only comment I ever made or ever thought of was that it belonged to Mrs. Cooper."
The trial judge noted that this unfortunate suit arose only after plaintiff had attempted to partition the land between her seven living children, and "certain beneficiaries... became unsatisfied." We observe, in reviewing the record, that the oldest living child at the time of the questioned sale was Thelma Cooper Purvis, one of the nominal defendants, who was only 12 years old then. Much of the testimony of the children as to the events surrounding plaintiff's purchase of the tract, must be considered with this fact in mind. Four of the named defendants supported plaintiff's position. Florence Cooper Kinchen testified emphatically that, "... it was always Mother's property. Daddy never claimed it." Ora Nell Cooper Garon stated that she had heard family discussions concerning the ownership of the land and that her daddy always spoke of the land as being her mother's property. The testimony of the remaining two nominal defendants was similar. Admittedly, some of these statements were based on hearsay; however, such statements may be received in explanation and corroboration of known facts which have been established by documentary and circumstantial proof. Southwest Natural Production Company v. Anderson, supra; and See Jones v. Deese, 205 La. 55, 16 So.2d 904 (1944).
The opposing defendants testified that their impression had always been that the property belonged to their mother and father. However, the record is full of documentary evidence which shows that during these defendants' lives, plaintiff has continually administered the property as her separate estate. Her separate acts of dominion include: (1) redeeming the property in her *317 name after it was sold for taxes in 1932; (2) granting Dixie Electric Membership Corporation a right-of-way in 1941; (3) granting the Louisiana Power and Light Company a right-of-way in 1937; (4) granting South Central Bell Telephone Company a right-of-way in 1976; and (5) granting a mineral lease on the property in 1976. While not positive evidence of ownership, these acts of dominion do tend to show that plaintiff possessed the land as her separate property and that such was presumed by those who sought to gain interests and rights therein. See Guilbeau v. Guilbeau, 224 La. 837, 71 So.2d 129 (1954). The record further reveals that plaintiff sold property from the tract totaling 2¼ acres to Matthew Kinchen. Two acres were sold in 1933, and ¼ acre in 1944. Plaintiff alone appeared as vendor in both sales; however, in the 1944 sale, St. Clair Cooper, Sr., appears to have signed his wife's name, as vendor. This was admitted in the testimony of Ruby Cooper Pierson, one of the opposing defendants. We note that several of these acts of ownership were accomplished during the lifetime of plaintiff's husband, who died in 1944, yet during the twenty years prior to his death, he never appeared to dispute the title of his wife. Furthermore, it was stipulated that the property was assessed in the name of plaintiff. All these factors are to be weighed in determining if the wife has rebutted the presumption in favor of the community. See Jones v. Deese, supra.
Defendants' counsel elicited much testimony concerning the monies used to redeem the property in 1932. We agree with the trial judge that even assuming community funds were used in the redemption, the character of the property as separate or community, would not be affected.[2] The nature of the property as being separate or community, is established at the time of acquisition. La.C.C. art. 2402; Curtis, supra; Joseph v. Travis, 99 So.2d 548 (La.App. 2d Cir.1957).
Our courts have continually given women the opportunity to prove the true character of disputed property. The Second Circuit in Joseph v. Travis, supra, in discussing the unimportance of an absence of a recitation of paraphernality in a deed, commented with respect to the wife:
"The law is zealous in guarding her interests against those of her husband and/or his heirs and his creditors. She is permitted to assert and establish that the property is her separate and paraphernal property whenever and wherever that fact is questioned." 99 So.2d at 551.
More recently, the Louisiana Supreme Court, in Curtis, supra, eliminated the restrictions placed on a wife's ability to prove the separate nature of property purchased on credit.[3] In so doing, the court stated:
"Just as our legislature has amended the matrimonial regimes section of our Civil Code to reflect modern economic and social realities, so are we impelled to eliminate these restrictions and to recognize that rules which produced a just result under certain circumstances may not do so when conditions change." 403 So.2d at 58.
In light of the applicable law as stated herein and the facts presented, we conclude that the trial judge was not clearly wrong in finding that plaintiff had overcome the presumption in favor of the community. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Accordingly, we affirm his decision declaring the 44.8-acre tract to be the plaintiff's separate property. All costs of this appeal are assessed to Ruby Cooper Pierson, Geneva Cooper Rivett, and Clara Lee Cooper Campbell.
AFFIRMED.
NOTES
[1] In the actual deed, the words "father and" have been marked through.
[2] The proper remedy for the heirs, in regard to community funds expended, is to seek reimbursement from the separate estate. La.C.C. art. 2408.
[3] Before Curtis, the wife who bought on credit, in addition to the triple burden, was sometimes required "to show that the cash portion of the purchase price bore such a relation to the total price that the property afforded sufficient security for the credit portion, and that the property afforded sufficient separate revenues to be reasonably certain of being able to meet the deferred payments."

403 So.2d at 58, and authorities cited therein.