| iSTEWART, Judge.
Effie Gordon filed suit against her deceased sister’s husband, Robert Brewster, in his capacity as administrator of Gladys Brewster’s estate, alleging that a certificate of deposit with a balance of $36,214.20, included in the Sworn Descriptive List as community property, was the separate property of Gladys Brewster. Robert Brewster now appeals the judgment of the trial court in favor of Effie Gordon. For the assigned reasons, we affirm.
FACTS
Prior to her marriage to Robert E. Brewster, the decedent, Gladys Brewster, had two certificate of deposit accounts with Jonesboro Federal Savings and Loan Bank in Jones-boro, Louisiana. The record reveals that in 1987, account number 231030-11 contained $45,578.05 and account number 700970-01 contained $6,536.90. In June of 1988, Gladys Brewster had over $47,303.25 in account number 231030-11.
On November 26,1988, Robert and Gladys Brewster were married. On August 16, 1991, the accounts at Jonesboro Federal were closed with a balance of $35,214.20 in account number 231030-11 and $2,741.88 in account number 700970-01. As a result of the closure of Jonesboro Federal, the Resolution Trust Corporation (RTC) issued two checks made payable to Gladys Brewster. One cheek, issued on August 22, 1991, was for $35,214.20 and referenced account number 231030-11 and the other check was for $2,741.18 and referenced account number 700970-01. Subsequently, on August 22, 1991, a non-negotiable certificate of deposit account was opened at Central Bank of Monroe and issued to “Gladys or Robert Brewster” in the amount of $36,214.20.
Mrs. Brewster died on March 15, 1993. Robert Brewster was appointed administrator of her estate. As administrator, Mr. Brewster filed a Sworn ^Descriptive List itemizing the certificate of deposit at Central Bank as community property. Effie Gordon, the sister of the deceased, filed a motion contesting the Sworn Descriptive List. In that motion, Gordon contends that the certificate of deposit was the separate property of the deceased and that Mr. Brewster had no interest in those funds.
In a written opinion, the trial court held that $30,467.38 of the funds in the certificate of deposit were the separate property of the decedent. The remaining amount of $5,746.82, representing the accrued interest deposited into the accounts at Jonesboro Federal and Central Bank, was determined *553 to be community funds. Additionally, the court ordered that the Sworn Descriptive List reflect a community debt owed to the separate estate of the decedent in the amount of $6,536.05, the amount withdrawn from the Central Bank certificate to pay a community note at Central Bank on a house and lot purchased from Rosa Lee Huston. After the motion for a new trial was denied, Mr. Brewster lodged this appeal.
DISCUSSION
In assignment of error one, the appellant argues that the trial court erred when it determined that funds in the certificate of deposit at Central Bank were the separate property of the decedent. In addition, appellant contends in assignment of error two that the trial court erred when it held that the Sworn Descriptive List should reflect a community indebtedness to the decedent’s separate estate of $6,536.05. This amount reflects an amount withdrawn from the certificate of deposit at Central Bank and used to purchase separate property.
Under this state’s law, property is either characterized as community or separate. Art. 2340 of the Louisiana Civil Code creates a strong presumption that all property acquired during the existence of a marriage is community. However, |3this presumption is rebuttable. A married person could acquire separate property during marriage by inheritance, by donation or by acquisition with separate funds. La.Civ.Code art. 2341. The jurisprudence has established that the burden of overcoming the presumption in favor of the community rests on the party asserting the separate nature of the property. Curtis v. Curtis, 403 So.2d 56, 58 (La.1981).
In Curtis, the Louisiana Supreme Court explained:
We have stated in cases involving bank accounts that the mere mixing of separate funds and community funds in the samé account does not of itself convert an entire account into community property; only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all the funds characterized as community funds. Curtis, swpra, at 59, citing Graves v. United States Rubber Co., 237 La. 505, 111 So.2d 752 (1959) and Brwyninckx v. Woodward, 217 La. 736, 47 So.2d 478 (1950).
The Court further stated that:
Where separate funds can be traced with sufficient certainty to establish the separate ownership of property paid for with those funds, the separate status of such property will be upheld. Curtis, supra, at 59, citing Graves, supra, and Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947).
In the instant case, the record reveals that RTC issued two checks totaling $37,-955.58 to the decedent, representing the amount on deposit at Jonesboro Federal in accounts opened prior to decedent’s marriage to Robert Brewster. The appellant testified that a month later, the funds from the Jones-boro Federal account were used to purchase a non-negotiable certificate of deposit at Central Bank in the amount of $36,214.20. Moreover, the record is void of any evidence indicating that the appellant deposited or withdrew funds from the certificate at Central Bank over a three and a half year period. At trial, Brewster stated that he had his own personal account at a bank in Farmerville, and made transactions there involving his gardéning and social security funds.
|4The funds used to purchase the certificate at Central Bank can clearly be traced from the accounts opened at Jonesboro Federal prior to the decedent’s marriage to Robert Brewster. Thus, the trial court correctly determined that $30,467.38 of the funds in question were the separate property of the estate of Gladys Brewster and that the remaining $5,746.82 in accrued interest was community property. We find no manifest error in that determination.
The trial court also correctly held that the inventory should reflect an indebtedness of the community to the separate estate of the deceased in the amount of $6,536.05. At trial, appellant testified that he used funds from the certificate at Central Bank to pay the balance of a community note, representing the purchase price of a house and a lot. In light of the fact that the funds used to pay a community obligation were the sepa *554 rate property of the decedent, the community remains indebted to the decedent’s estate. La.Civ.Code arts. 2345, 2365.
In assignment number three, the appellant cites as error the trial court’s decision to admit the records from RTC in Dallas, Texas, which indicated the amounts the decedent had on deposit at Jonesboro Federal Savings and Loan. Appellant contends that the admission of these documents into evidence was a violation of article 803(6) of the Louisiana Code of Evidence.
At trial, Mr. Brewster testified that at the time that he married the decedent, his only income was from gardening and social security. He. deposited and withdrew those funds from a bank in Farmerville. Mr. Brewster also admitted that his wife had certain funds on deposit at Jonesboro Federal and that those funds were later used to purchase a certificate of deposit at Central Bank. The records from Jonesboro Federal also indicate that the decedent had $35,214.20 in a certificate of deposit account and $2,741.88 in another account at the time the accounts were Isdosed. These were the same amounts that were later paid by RTC to Mrs. Brewster after Jonesboro Federal’s closure.
After a review of the record, we find that even if the documents from RTC, reflecting the amount of the checks issued to Mrs. Brewster, had been excluded from evidence as appellant suggests, there still would have been ample evidence before the trial court to directly trace the funds in the previous Jonesboro Federal accounts to the certificate of deposit at Central Bank. Therefore, this assignment also lacks merit.
DECREE
Thus, we find that the trial court did not commit manifest error and affirm the decision of the trial court at appellant’s cost.
AFFIRMED.