403 So.2d 56 (1981)
Mrs. Verlie Holton, Wife of Fred B. CURTIS
v.
Fred B. CURTIS.
No. 80-C-2613.
Supreme Court of Louisiana.
July 7, 1981.
Rehearing Denied September 28, 1981.
Frederick R. Bott, Patricia Maureen Joyce, Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff-applicant.
Edward J. Lassus, Jr., Corey, Reed, Bethay & Kogos, New Orleans, for defendant-respondent.
*57 DIXON, Chief Justice.[*]
The issue in this case is whether certain immovable property, 2501-03 St. Charles Avenue, New Orleans, purchased during the existence of a marital community between plaintiff and defendant, is separate or community property.
Mr. and Mrs. Curtis were married on September 9, 1956.[1] On June 9, 1959, Mrs. Curtis made an offer to purchase the contested property, and on August 31, 1959, she acquired the property by act of sale from State Savings and Loan Association. Mr. Curtis intervened in both the purchase offer and the act of sale, declaring that the property was his wife's separate and paraphernal property, purchased with separate and paraphernal funds under her administration and control and that the community which existed between them had no interest whatsoever in the property and that all payments and installments due on the property would be paid by his wife with separate funds under her separate administration and control.
Mrs. Curtis paid $28,500 of the $60,000 purchase price in cash and financed the balance, $31,500, through a fifteen year mortgage with State Savings and Loan Association. On April 29, 1964, she refinanced the property through a sale and resale to State Savings. Mr. Curtis appeared as a vendor, but he again acknowledged the separateness of the property and the funds, and the resale was to Mrs. Curtis alone.
On September 1, 1966, Mr. Curtis left the matrimonial domicile and the couple began living separate and apart. Mrs. Curtis filed for separation on February 12, 1968, and a separation judgment was rendered on April 17, 1968. A judgment of divorce was rendered on August 3, 1970. At the time of the divorce, the community of acquets and gains was not partitioned. On November 20, 1978, Mrs. Curtis petitioned for a partition by licitation of all the property belonging to the former community and filed a sworn descriptive list setting forth the community's assets. Mr. Curtis filed an opposing descriptive list claiming the St. Charles Avenue property as community property. Neither party testified at trial. The evidence presented consisted of documents pertaining to the sale, interrogatories and stipulations by both parties that the $28,500 down payment was made with Mrs. Curtis' separate funds and that the credit payments were made with rentals collected from apartments contained in the property.
The trial court held that the property was community property because community funds (rentals) were commingled with separate funds to acquire the property. The court also held that the community owed Mrs. Curtis' separate estate a debt for the separate funds she used to acquire the property.
Mrs. Curtis suspensively appealed to the Court of Appeal. While the parties were waiting for the record to lodge there, Mr. Curtis died and his succession was substituted in the proceeding.
The Court of Appeal, 388 So.2d 816, amended the trial court's decision, limiting the community's interest to 52.5% and recognizing Mrs. Curtis' separate interest of 47.5%. The court concluded that Mr. Curtis' recitals did not prevent him from later arguing that the credit portion of the price was paid with community funds. The court added that Mrs. Curtis failed to prove that she had sufficient paraphernal revenues to make the purchase with a reasonable expectation of making the deferred payments.
The Court of Appeal was in error in holding the property part community and part separate. While other community property states may categorize property paid for in part with separate funds and in part with community funds as mixed,[2] Louisiana *58 does not do so. Under our law property is characterized as either community or separate. The Civil Code articles applicable to this case (as they existed before revision by La. Acts 1978, No. 627 and La. Acts 1979, No. 317) created a strong presumption that all property acquired during the existence of a marriage fell into the community of acquets and gains. C.C. 2402.
However, this presumption was rebuttable. A married person could acquire separate property during marriage by inheritance, by donation, or by acquisition with separate funds. C.C. 2334. The jurisprudence established that the burden of overcoming the presumption in favor of the community rested on the party asserting the separate nature of the property. The husband who took title in his name was required to declare in the act of sale that he was purchasing with his separate funds for his separate estate; if he failed to make such a declaration, title was presumed to be in the community, and he was barred from presenting evidence to rebut the presumption. The wife, on the other hand, was not required to make such a declaration in the deed to preserve her right to prove the separate nature of property at a later date.[3] She was permitted to offer evidence dehors the act of conveyance establishing the separate nature of the property even in the absence of a declaration of paraphernality in the deed. However, she had a triple burden of proof: she had to prove not only that she used separate funds for the purchase, but also that the funds were administered by her alone and were available for investment. Succession of Franek, 224 La. 747, 70 So.2d 670 (1953); Houghton v. Hall, 177 La. 237, 148 So. 37 (1933); Succession of Burke, 107 La. 82, 31 So. 391 (1902).
Furthermore, to prevent her from indulging in "wild and ruinous speculations," the courts sometimes required the wife who bought property on credit to show that the cash portion of the purchase price bore such a relation to the total price that the property afforded sufficient security for the credit portion, and that she had sufficient separate revenues to be reasonably certain of being able to meet the deferred payments. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962); Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947); Montgomery v. Bonanchaud, 179 La. 312, 154 So. 8 (1934); Fortier v. Barry, 111 La. 776, 35 So. 900 (1904); Jordy v. Muir, 51 La.Ann. 55, 25 So. 550 (1898); Miller v. Handy, 33 La.Ann. 160 (1881); Bouligny v. Fortier, 16 La.Ann. 209 (1861).
These judicially imposed restrictions on a wife's freedom to purchase on credit may have been justified in previous years when most women stayed home and did not have separate incomes. It may have been logical for courts then to assume that the wife who received a particular donation, or inheritance, and used it to purchase property on credit terms would in fact have to use community funds for subsequent payments, in the absence of a continuing source of income. Today, however, with an ever increasing number of women entering the work force, such restrictions are no longer supportable. Just as our legislature has amended the matrimonial regimes section of our Civil Code to reflect modern economic and social realities, so are we impelled to eliminate these restrictions and to recognize that rules which produced a just result under certain circumstances may not do so when conditions change. We believe that a married woman is entitled to purchase *59 property on credit as an investment, and to avail herself of the same credit devices her husband can use. We do not believe that she should have to prove that she can use credit more wisely than he. If she later uses community funds to pay her separate debt, she is obligated to reimburse the community for that amount.
We find that the evidence presented at trial adequately establishes that the property is Mrs. Curtis' separate property, bought by her with separate funds administered solely by her. Both parties stipulated that the cash down payment was made with her separate funds. The interrogatories indicated that Mrs. Curtis sold two pieces of property that she owned before she met Mr. Curtis, and used that money for the down payment. Mr. Curtis declared on three different occasions, in three different writings, that Mrs. Curtis was buying the property for her separate estate, with her separate funds, and that the community had no interest whatsoever in the property. Our jurisprudence has long held that a husband who has been a party to an act of purchase in which such declarations are made cannot afterwards be heard to contradict it. Betz v. Riviere, supra; Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676 (1946); Pfister v. Casso, 161 La. 940, 109 So. 770 (1926); Maguire v. Maguire, 40 La.Ann. 579, 4 So. 492 (1888); Kerwin v. Hibernia Insurance Co., 35 La.Ann. 33 (1883). Our legislature has seen fit to recognize the wisdom of this judicial principle by codifying it as new C.C. 2342 (effective January 1, 1980):
"A declaration in an act of acquisition that things are acquired with separate funds as the separate property of a spouse may be controverted by the other spouse unless he concurred in the act...." (Emphasis added).
The holding of Barnes v. Thompson, 154 La. 1036, 98 So. 657 (1923)relied on by the appeal courtthat the husband's recitations in the deed at the time of acquisition did not prevent him from later controverting the paraphernal nature of the property by showing that deferred payments were made with community funds has been repudiated in other cases involving credit sales to wives. This court has held on several occasions that a husband who declares in a deed that his wife is buying property for her separate estate with her separate funds cannot later dispute the separate nature of the property, even if it was bought on credit. Betz v. Riviere, supra; Rousseau v. Rousseau, supra; Fireman's Insurance Co. v. Hava, 140 La. 638, 73 So. 708 (1916); Maguire v. Maguire, supra. These cases, among others, also establish that property declared to be separate at acquisition does not change character if a subsequent credit payment is made with community funds. Proof that the community contributed to the purchase of separate property would only create a debt on the part of the wife's separate estate to the community for the amount of community funds used. It would not convert the property or any portion of it to community property.[4] Only when community and separate funds are mingled in the initial acquisition may the property be regarded as community. We have stated in cases involving bank accounts that the mere mixing of separate funds and community funds in the same account does not of itself convert an entire account into community property; only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all the funds characterized as community funds. Graves v. United States Rubber Co., 237 La. 505, 111 So.2d 752 (1959); Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478 (1950); Succession of Land, 212 La. 103, 31 So.2d 609 (1947). Where separate funds can be traced with sufficient certainty to establish the separate ownership of property paid for with those funds, the separate status of such property will be *60 upheld. Graves v. United States Rubber Co., supra; Betz v. Riviere, supra.
In this case, the disputed property was initially acquired solely and incontrovertibly with Mrs. Curtis' separate funds. No community funds were used for the down payment. The property is therefore Mrs. Curtis' separate property. At most she might owe a debt to the community for the amount of community funds used to make the later credit payments.
However, we do not believe that Mrs. Curtis' use of the rentals from the property to pay the mortgage created a debt to the community; the declarations made and signed by Mr. and Mrs. Curtis are in substantial compliance with the requirements of C.C. 2386 to reserve the fruits (rentals) of her separate property to her separate estate. Article 2386 (now repealed) stated that the fruits of the wife's separate property fell into the community unless she declared in a written instrument that she reserved the fruits for her separate use and intended to administer her property separately and alone. The code required that the instrument be executed before a notary public and two witnesses and recorded in the Conveyance Records of the parish where the community was domiciled. The requirement of a written instrument led many women to execute affidavits of paraphernality, separate authentic acts containing the necessary declarations and properly recorded. However, C.C. 2386 does not specify that the declarations must be made in a separate document. The declaration in the act of sale meets the requirements set out in C.C. 2386: the act is a written instrument, in authentic form, and properly recorded. The joint declaration by the parties that all credit payments on the property will be paid with Mrs. Curtis' separate funds, under her administration and control, is sufficient to prevent all the rents from which the credit portion was to be paid from falling into the "conjugal partnership."[5]
Since the property at 2501-03 St. Charles Avenue is Mrs. Curtis' separate property, and since we find that the declarations in the act of sale served to reserve the fruits of her separate property for her separate use, Mrs. Curtis need not reimburse the community for the use of those rentals.
The judgment of the Court of Appeal is reversed, at the cost of respondent.
CALOGERO, J., dissents in part, concurs in part for the reasons assigned.
HALL and GARVEY, JJ. ad hoc, dissent and assign reasons.
CALOGERO, Justice, concurring in part and dissenting in part.
I concur in the majority opinion insofar as it holds that the property in question is the separate property of Mrs. Curtis. Mr. Curtis, as intervenor, declared in the act of sale that Mrs. Curtis was purchasing the property with her separate and paraphernal funds, that the community of acquets and gains had no interest in the property, and that all payments due would be paid with Mrs. Curtis' separate funds under her separate administration and control. Under the estoppel by deed doctrine, this declaration by the husband barred him from contradicting those assertions at a later date. Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947); Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676 (1946); Pfister v. Casso, 161 La. 940, 109 So. 770 (1926); Maguire v. Maguire, 40 La.Ann. 579, 4 So. 492 (1888); and Kerwin v. Hibernia Insurance Co., 35 La.Ann. 33 (1883). While it is true that such a declaration by the husband does not prevent either his forced heirs or creditors from proving that the declaration was false (and of course Mr. Curtis died while the matter was on appeal), Mr. Curtis had no forced heirs, and no creditors are involved. Therefore, I believe that because Mr. Curtis made the above declaration in the act of sale he was *61 estopped from later contradicting those statements, and the property is the separate property of Mrs. Curtis.
However, I dissent from the majority holding that Mrs. Curtis' use of rentals from the property to pay the mortgage debt did not create a community debt. It is well settled that the fruits from separate property fall into the community estate. The only exception to this was provided by La. Civ.Code art. 2386 which permitted the wife to reserve the fruits of her separate property to her separate estate by filing a declaration as provided by the article. Prior to its being repealed by the Legislature in 1979 when the new matrimonial regime statutes were enacted, La.Civ.Code art. 2386 provided in pertinent part:
"Art. 2386. The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish where the community is domiciled." (Emphasis provided)
The majority contends that the declarations made by the husband in the act of sale amount to substantial compliance with the statute such that the fruits of this property were reserved for Mrs. Curtis' separate use. The declarations made by Mr. Curtis in the act of sale were as follows:
"And now unto these presents personally came and intervened, FRED B. CURTIS, husband of Verlie Holton Curtis, who declared and acknowledged unto me, Notary, that the above described property is his wife's separate and paraphernal property, she having purchased same with her separate and paraphernal funds under her separate administration and control and the community of acquets and gains which exist between them has no interest whatsoever in said property, and that all payments and installments due herein shall be paid by his said wife with her separate funds under her separate administration and control."
I do not agree that this declaration by Mr. Curtis complies with the requirements of La.Civ.Code art. 2386 to reserve the fruits (rentals) of Mrs. Curtis' separate property to her separate estate. There is no declaration by Mrs. Curtis at all, as is required. Furthermore, even if we were to presume that the statement was made by Mrs. Curtis, because she signed the document containing Mr. Curtis' declaration, the declaration itself does not state that the fruits of this property are being reserved nor does it specify that the fruits will be for her separate use or that she intends to administer this specific piece of property separately and alone as were all required under La.Civ.Code art. 2386.
Since I do not believe that Mrs. Curtis complied with La.Civ.Code art. 2386 in reserving the fruits (rentals) of this property to her own separate estate, I believe the rentals constituted community property. Since the rentals, community property, were used to pay Mrs. Curtis' separate debt, she accordingly owes reimbursement to the community.
My conclusion that Mrs. Curtis did not comply with the requirements of La.Civ. Code art. 2386 makes it unnecessary for me to consider an issue that the majority has ignored, that is, whether La.Civ.Code art. 2386 was unconstitutional, since it allowed a wife to reserve the fruits of her separate property for her separate estate with no comparable privilege being afforded the husband under the law.
For the foregoing reasons, I only concur in the majority holding that the property is the separate property of Mrs. Curtis but dissent from the part of the opinion that holds Mrs. Curtis does not owe reimbursement to the community for the rentals used to pay the credit portion of the sale price.
*62 HALL, Justice Ad Hoc, dissenting.
I agree with the majority conclusion that the court of appeal erred in holding the property is part community and part separate. In my view, the property is community property, as held by the trial court, and not separate property as held by this court.
The well-established rule of law is that in order to overcome the presumption that property purchased during the marriage is community property, the wife must establish that the property was purchased with her separate funds under her separate administration and that the funds were available for investment. See the cases cited in the majority opinion. In the case of a credit purchase, the wife must also show that the property afforded sufficient security for the credit portion, and that she had separate revenue to be reasonably certain of being able to meet the deferred payments. See the cases cited in the majority opinion.
Here, Mrs. Curtis failed to prove that at the time of the purchase she had sufficient separate property or revenue to discharge the credit portion of the purchase price. Consequently, she failed to establish the basic requirement of LSAC.C. Art. 2334, that is, that the property was acquired with separate funds. It was acquired in part with separate funds (cash portion of purchase price) and in part with community funds (credit portion of purchase price). The status of the property as community or separate must be determined on the basis of the facts as they existed at the time of purchase. Since Mrs. Curtis had no separate revenue to pay the credit portion of the price, necessarily the credit portion was to be paid from community funds. Even if it was intended that rent from the property being purchased be used to pay the credit portion, the rent would be community funds, whether the property be regarded as separate or community. Rent from both separate and community property falls into the community. The code makes an exception to this rule in the case of the wife (but not the husband) who executes the declaration authorized by LSAC.C. Art. 2386, but in this instance the wife did not execute such a declaration.
The declaration in the deed does not comply with Article 2386 in that it does not state that the wife reserves all of the fruits or rents from the property for her separate use and benefit; nor does it state her intention to administer the property or rent separate and alone. The precise language of the declaration is:
"And now unto these presents personally came and intervened, FRED B. CURTIS, husband of Verlie Holton Curtis, who declared and acknowledged unto me, Notary, that the above described property is his wife's separate and paraphernal property, she having purchased same with her separate and paraphernal funds under her separate administration and control and the community of acquets and gains which exists between them has no interest whatsoever in said property and that all payments and installments due herein shall be paid by his said wife with her separate funds under her separate administration and control."
It is a declaration by the husband, not the wife, and does not mention fruits or rents from the property or the manner in which the fruits or rents from the property are to be administered.
Mr. Curtis, and his substituted succession after his death, are not estopped from defending against Mrs. Curtis's efforts to overcome the presumption of community property. None of the cases cited by the majority opinion in support of the estoppel holding involved a credit sale. To apply estoppel would be to sanction the classification of property as separate or community by declaration of the husband and wife, regardless of the true facts and legal classification flowing therefrom, and to allow husband and wife during the marriage to contractually alter civil code provisions regulating the community of acquets and gains. The legislature in its comprehensive revision of matrimonial regime laws amended the civil code and changed the law as to transactions occurring after the effective date of the revision, but this court should *63 not, for perceived policy reasons, change settled principles of community property law applicable to transactions which occurred many years ago.
Although I believe the trial court correctly held the property to be community property, I note that this court could not afford relief to the succession of Mr. Curtis from the court of appeal judgment because the succession did not apply for writs to this court; it was Mrs. Curtis's application which was granted. The court of appeal judgment cannot be changed to benefit a party who did not apply for review to the prejudice of the party who did seek review. Carollo v. Wilson, 353 So.2d 249 (La.1977); Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). See also Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La.1979). Under my view of the case, the judgment of the court of appeal, although incorrect to the extent that it recognized the property as being partly separate, should be affirmed.
I respectfully dissent.
GARVEY, Justice Ad Hoc, dissenting.
For the reasons assigned by Justice Ad Hoc Hall, I respectfully dissent.
NOTES
[*] Judges Richard J. Garvey and Pike Hall, Jr. participated in this decision as Associate Justice Ad Hoc in place of Associate Justices Marcus and Lemmon, recused.
[1] The marriage was Mr. Curtis' only marriage. Mrs. Curtis was married before, to Fred Cooner who predeceased her.
[2] See Community Property: A Comparison of the Systems in Washington and Louisiana, 39 La.L.Rev. 479, 485 (1979), wherein the author notes that under Washington law, ownership of a mixed acquisitionproperty acquired with separate and community assetsis apportioned according to the respective contributions of the parties, except that an inconsequential contribution may be ignored or disappear under commingling analysis. See also Separate Ownership of Specific Property v. Restitution from Community Property in Louisiana, 26 Tul. L.Rev. 427 (1952).
[3] In some cases declarations by the spouse in the deed that the wife was buying the property with her separate funds for her separate estate were held insufficient to rebut the presumption of community and the wife was required to produce evidence dehors the act to establish title. Smith v. Smith, 230 La. 509, 89 So.2d 55 (1956); Johnson v. Johnson, 213 La. 1092, 36 So.2d 396 (1948); Gogreve v. Dehon, 41 La. Ann. 244, 6 So. 31 (1889).
[4] Under new Civil Code articles 2338 and 2341, which do not apply to this case, property purchased with both separate and community funds would appear to be community property, unless the amount of community funds used is inconsequential in comparison with the amount of separate funds used.
[5] In Graves v. United States Rubber Co., supra, this court also faced a contention by a wife that a declaration in an act of sale was sufficiently in compliance with C.C. 2386 to reserve the earnings of her separate property for her separate benefit. Because it was immaterial to the decision of the case, we did not rule on the issue there.